### 24614. POLLARD, receiver, *v.* GORMAN *et al.*

128

Decided November 16, 1935.

*Beck, Goodrich & Beck,* for plaintiff in error.

*Arnold, Gambrell & Arnold, Chester A. Byars,* contra.

JENKINS, P. J. The surviving children sued the railroad company for the full value of the life of their mother, who, while riding as a guest in an automobile driven by her husband, was killed on a public crossing by the impact of a locomotive drawing four passenger-cars. The automobile was traveling northward up the paved highway, and the train was moving at 50 or 60 miles an hour in the same direction. The car entered an unpaved road, at an approximate right angle to the highway, about 30 feet from the railroad-track, and started to cross the track at a speed of about 25 miles an hour. The mother was seated on the front seat at the right of the car, the direction from which the train was coming. The fireman sat on the side of the locomotive where the highway and automobile were, and the engineer sat on the other side. The fireman first saw the automobile when it was about 65 feet from the crossing just before it started to turn, and the train was about 50 or 65 feet from the crossing when the car

started to turn. The fireman then made an exclamation, warning the engineer, who, without previous knowledge of the danger, then blew an emergency blast of the whistle, and threw on the emergency brakes. The train was stopped at a distance of from 500 yards to a half mile from the crossing; and the automobile was then found on the "cowcatcher" of the locomotive, with the occupants of the automobile all dead inside of the car. There was no evidence indicating whether the father or the mother had died first, unless we consider the testimony that the locomotive struck the car at about its center on the side where the mother was, that her body was found against that of her husband, that her weight was about 200 pounds, and that she was in excellent health, attending regularly to heavy household work. The wind was blowing from the direction opposite to that from which the train and the automobile were moving. It was not shown whether the glasses of the closed automobile were up or down. It was cloudy and rather cold. Behind the train were trees, but there was nothing else which might have affected the vision of the occupants of the automobile or have prevented them from seeing the train, if they had looked, except that at one position, close to the cross-road approaching the track, there was a telephone-pole, which would have obstructed the vision of a person looking from an automobile in that location for an approaching train. There was no evidence as to what the mother did or did not do in warning or failing to warn the driver of the car, or to indicate that she herself was guilty of contributory negligence. The fireman and the engineer both testified that the regular public crossing signal was properly blown before reaching the crossing in question. Two other witnesses, who lived respectively about two hundred yards and about a quarter of a mile from the crossing, testified that, although they heard a distress whistle blown immediately preceding the crash, they did not hear any crossing whistle blown, or see any indication of steam from the whistle. The jury returned a verdict of $5000 for the plaintiffs. The defendant assigns error on the refusal of a new trial on the general grounds, and on special grounds attacking portions of the charge, as stated in the following opinion.

1. Under the Code of 1933, § 105-1306, if a mother dies, leaving children and a husband who lives even for a short time

after her tortious death, and no action for the homicide has been commenced, the whole cause of action, being vested jointly in the husband and children, abates. But if the mother dies, leaving only children and no husband surviving her, such children, whether minors or adults, have a right of action for her homicide. *Hood* v. *Southern Ry. Co.,* 169 *Ga.* 158 (149 S. E. 898) ; *Atlanta & West Point R. Co.* v. *Venable,* 65 *Ga.* 55; *Thompson* v. *Ga. Ry. &c. Power Co.,* 163 *Ga.* 598 (136 S. E. 895) ; *Elberton* v. *Thornton,* 138 *Ga.* 776 (76 S. E. 62, Ann. Cas. 1913E, 994). Where two persons perish in a common disaster under circumstances which render it impossible to determine the order of their deaths, as to questions of inheritance, it was the rule at common law, and is the general rule in most jurisdictions, as expressed in the Code, § 113-906, that although there is no presumption of law as to the survivorship of either person, and the survival of either must be proved by the party asserting it, the law will treat the titles and rights of the persons as remaining where they were vested at the time of the deaths, irrespective of survivorship. In matters of inheritance, the practical result is the same as if the law presumed that both persons perished at the same moment, although no presumption of law exists in such cases. See, as to the burden of proof in questions of survivorship, *Roberts* v. *Hardin,* 179 *Ga.* 114 (175 S. E. 362) ; and as to the common law and general rules, article on "Presumption as to Order of Death in a Common Calamity," by D. H. Redfearn, 9 Florida Law Journal, No. 5, May, 1935, pp. 419, 422. See also *Hitchcock v. Beardsley,* 1 West. Ch. 445, 25 Eng. Reprint, 1025 (decided in 1738); *Coye v. Leach,* 8 Metc. (Mass.) 371 (41 Am. D. 518); *Young Women's Christian Home v. French,* 187 U. S. 401 (23 Sup. Ct. 184, 47 L. ed. 233) ; *Newell v. Nichols,* 75 N. Y. 78, 79 (31 Am. R. 424) ; *Middeke v. Balder,* 198 Ill. 590, 597 (64 N. E. 1002, 59 L. R. A. 633) ; *Supreme Council v. Kacer,* 96 Mo. App. 93, 101 (69 S. W. 671) ; *Cowman v. Rogers,* 73 Md. 403 (21 Atl. 64, 10 L. R. A. 550) ; 17 C. J. 1179, 1180. These general rules, however yield where there is actual proof, even though slight and circumstantial. In the instant suit against a railroad company by children for the alleged tortious homicide of their mother, under the Code, § 105-1306, and under the averments of the petition that she "left surviving her no husband and

no children except the plaintiffs," the burden was on the plaintiffs to prove that the mother left no husband surviving her. But where the deaths of the husband and wife occurred in a common catastrophe, it was sufficient to prove by direct or circumstantial evidence that they died at the same time, without going further to prove that the husband died first. The court clearly and correctly charged these principles. Where the testimony showed that the locomotive, moving at a speed of about 50 miles an hour, struck at about the center the automobile in which the mother, sitting on the front seat with her husband driving, was traveling over a public crossing, that the automobile was picked up and carried on the front of the locomotive for a distance of from 500 yards to a half mile beyond the crossing before the train stopped after throwing on the emergency brakes, that both persons were found dead inside the car immediately thereafter, that the body of the mother was found against that of her husband, and that she had been in excellent health, weighing about two hundred pounds, and attending regularly to heavy household duties,—in the absence of any evidence as to the nature of their wounds, the jury were not compelled to find that the mother died first, even though she sat on the side of the car where the locomotive first struck, but were authorized to find that death came simultaneously to both persons. Therefore there is no merit in the general and special grounds, contending that there could be no recovery because it did not affirmatively appear that the husband did not survive the mother.

2. Since the mother was riding as a "guest" in the automobile driven by her husband, without any right of direction or control by her of the machine, and since the evidence authorized a finding that both died simultaneously, the right and amount of recovery of the mother's children would be controlled by contributory negligence on the part of the mother, if this had been proved, but would not be affected by contributory negligence on the part of the husband driver, since the plaintiff's right of action under the Code, § 105-1306, passed to them directly on the mother's death, and did not come through the husband, so as to impute to them his negligence, which was not imputable to the mother. Therefore the court did not err in so charging the jury. See *Southern Ry. Co.* v. *King*, 128 *Ga.*

383, 385, 386 (57 S. E. 687, 11 L. R. A. (N. S.) 829, 119 Am. St. R. 390); *Metropolitan St. R. Co.* v. *Powell,* 89 *Ga.* 602 (16 S. E. 118); *Roach* v. *Western &c. R. Co.,* 93 *Ga.* 785 (21 S. E. 67); *Lazar* v. *Black & White Cab Co.,* 50 *Ga. App.* 567 (179 S. E. 250); *McCord* v. *Benford,* 48 *Ga. App.* 738, 739 (2, 3) (173 S. E. 208); *Fuller* v. *Mills,* 36 *Ga. App.* 357 (136 S. E. 807).

3. "Negative evidence does not amount to no evidence at all; otherwise the term would be a misnomer. And jurors are not obliged to discard it merely because of the existence of positive evidence in conflict therewith. 'Where the existence of a fact was affirmed by positive evidence and denied by negative evidence, an issue was raised, and the trial judge committed no error in properly submitting such issue to the jury. *Western & Atlantic R. Co.* v. *Mallett,* 23 *Ga. App.* 367 (2) (98 S. E. 238).'" *Georgia R. &c. Co.* v. *Wallis,* 29 *Ga. App.* 706, 714 (116 S. E. 883). Two witnesses having testified in this case that although they heard, just before the crash on a public crossing, a distress whistle blown by the defendant's locomotive which struck the automobile in which the plaintiffs' mother was riding, they did not hear any whistle blown for the crossing (as required by the Code, §§ 94-506, 94-9903), or see any indication of steam from the whistle to indicate that it was blown, the jury were authorized to find that the defendant was negligent in not blowing the required crossing whistle, notwithstanding the positive testimony of the engineer and fireman that the whistle was properly blown.

4. The question as to the proximate cause or causes of an injury being for the jury except in plain and indisputable cases, and a guest in an automobile, having no right of control over the driver's movements, not being affected in her right of recovery for a tortious collision by any contributory negligence of the driver, unless such negligence was the sole proximate cause of the injury, and there being no rule in this State that it is negligence as a matter of law for a traveler, not aware of the approach of a train, to attempt to cross over a public crossing without stopping, looking, and listening, but cases of this nature being generally each determinable under its own particular facts, the jury were authorized under the evidence to find that the failure

of the defendant's employees to blow the locomotive whistle for the crossing, as alleged in the petition, alone or coupled with the alleged high speed of the train at 50 miles an hour, was a contributing proximate cause of the collision and resulting homicide of the plaintiffs' mother; even though the jury were also authorized to find that the driver of the car was guilty of negligence partly contributing to the injury by not looking or listening for the approaching train, a view or hearing of which was obscured or impaired only by the presence of one telephone-pole at a certain location if the driver had looked at that place for the train, by the cloudiness of the day and the presence of trees in the background behind the train, by the fact that the wind was blowing from the direction opposite to that from which the train was coming, and by the fact that, immediately before the automobile turned from the paved highway about 30 feet from the crossing to enter at right angles the road over the crossing, the car and the train had been traveling in the same direction. See *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708, 713 (39 S. E. 306, 54 L. R. A. 82) ; *Comer* v. *Barfield,* 102 *Ga.* 485 (31 S. E. 89) ; *Comer* v. *Shaw,* 98 *Ga.* 543 (25 S. E. 733) ; *Seaboard Air-Line Ry. Co.* v. *Sarman,* 38 *Ga. App.* 637 (1-3) (144 S. E. 810) ; *Louisville & Nashville R. Co.* v. *Bean,* 49 *Ga. App.* 4(6-a) (174 S. E. 209) ; *Central of Ga. Ry. Co.* v. *Leonard,* 49 *Ga. App.* 689 (3), 701-708 (176 S. E. 137) ; *Coleman* v. *W. & A. R.,* 48 *Ga. App.* 343 (4, 5, 7), 346-351 (172 S. E. 577) ; *Reed* v. *So. Ry. Co.,* 37 *Ga. App.* 550 (2-4) (140 S. E. 921) ; *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759, 760 (3), 761 (154 S. E. 718) ; *Buffington* v. *A., B. & A. R. Co.,* 47 *Ga. App.* 85, 87 (169 S. E. 756) ; *Cox* v. *Central of Ga. Ry. Co.,* 38 *Ga. App.* 88-90 (143 S. E. 444) ; *Moore* v. *Seaboard Air-Line Ry. Co.,* 30 *Ga. App.* 466 (118 S. E. 471) ; *Lamb* v. *S. A. L. Ry. Co.,* 43 *Ga. App.* 573, 575 (159 S. E. 733) ; Pokora *v.* Wabash Ry. Co., 292 U. S. 98 (54 Sup. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049), modifying B. & O. R. *v.* Goodman, 275 U. S. 66, (48 Sup. Ct. 24, 72 L. ed. 167, 56 A. L. R. 645). The burden resting upon the defendant to show that the plaintiffs' mother as a guest in the car was herself guilty of contributory negligence defeating or reducing her recovery; and there being no evidence as to whether she failed to look or listen, whether she failed to warn the driver as to the coming train, or whether she was guilty of any act of commission ·

or omission which the jury might have found constituted contributory negligence, there was no issue as to such negligence, and the plaintiffs' right of recovery was not thereby affected. See *Western & A. R. Co.* v. *Casteel*, 138 *Ga.* 579 (75 S. E. 609); *Central of Ga. Ry. Co.* v. *North*, 129 *Ga.* 106, 107 (58 S. E. 647); *Stewart* v. *Mynatt*, 135 *Ga.* 637 (70 S. E. 325); *Georgia R. &c. Co.* v. *Stanley*, 38 *Ga. App.* 773, 775, 776 (145 S. E. 530).

5. (*a*) A trial judge should "give the jury clearly and fairly the law applicable to the issues involved; and if he does this, his failure to formally state the contentions as shown by the pleadings will not, as a general rule, be cause for a new trial." *Macon, Dublin & Savannah R. Co.* v. *Joyner*, 129 *Ga.* 683, 685 (59 S. E. 902); *Central Ry. Co.* v. *McKinney*, 118 *Ga.* 535 (45 S. E. 430). Where, in the instant case, the judge, after summarizing the averments of the petition and stating more fully the allegations of negligence, fairly summarized the averments of the defendant's answer, which, after denying generally the allegations of negligence, and setting up contributory negligence by the plaintiffs' mother, elaborated in detail its version of the facts preceding the collision of its train with the automobile in which she was riding, it was not error to fail to read or state to the jury these alleged detailed facts.

(*b*) Nor were the instructions relative to the alleged acts of negligence by the defendant subject to the exceptions that they intimated and expressed an opinion that such acts were in fact negligence, and were argumentative and prejudicial to the defendant. After stating that the plaintiffs "*charge*" the acts as alleged in the petition, and stating that "whether the defendant was guilty of these several acts of negligence or not is a question of fact for you to determine," the judge, immediately following this language, said, "It is for you to say whether, *as charged in the petition,* the defendant was guilty of these acts of negligence; whether it was a failure on the part of the defendant to use ordinary care in the operation of its train, it is a question of fact for you to determine." Elsewhere he emphasized to the jury that they must believe from the evidence that "the defendant was negligent in some or all of the particulars described in this petition, and that such negligence proximately caused the death of the decedent;" and that if from the evidence "you say that the defendant was not

negligent in any of the acts set out in the petition, or if you say that the defendant was negligent as set out, but this negligence did not contribute to or cause the death of [the decedent], then under these circumstances the plaintiffs could not recover in this case."

(c) While standard mortality tables are admissible in evidence as an aid to the jury in determining the life expectancy of a deceased person, the jurors are not bound by such tables, but may use "any method known to them as upright and intelligent men" in applying their knowledge of the common phenomena and facts of human experience to the evidence, where sufficient facts appear as to the age, health, physical condition, and habits of the deceased to afford a basis for a proper conclusion. *Central Ry. Co.* v. *Minor,* 2 *Ga. App.* 804 (2), 807 (59 S. E. 81), and cit.; *Merchants & Miners Trans. Co.* v. *Corcoran,* 4 *Ga. App.* 654 (6-b), 669 (62 S. E. 130), and cit. Therefore the court did not err in charging: "You may use these tables if you see fit. You yourself can arrive at the expectancy of the decedent, if you desire to do so, under the facts in this case as shown to you, using any method of calculation that you know to be correct;" the verdict rendered not exceeding the amount claimed in the petition, and what the jury could have found even if they had followed the life expectancy shown by the tables, under the undisputed evidence as to the age, good health, activities, and earning capacity of the deceased.

(d) Exception is taken to the following charge, as erroneous and calculated to mislead and confuse the jury: "You will bear in mind, gentlemen, the rules of law given you in charge relative to a verdict for full damages in such a case as this, without deduction; and if you apply the rule of diminishing damages given you by the court, because of the negligence of both parties, then you would treat that rule as to diminishing damages as applicable to· or controlled by the charge on the general subject of damages, as to reducing same to its present value in cash." Previously the court had charged the rule as to comparative negligence and diminution· of damages, as to the reduction in the plaintiff's recovery if the deceased and the defendant were both negligent, as contributing proximate causes of the homicide, and if the deceased's negligence did not amount to a want of ordinary care; and had also charged that, if the deceased by ordinary care could have prevented her death, the plaintiffs could not recover. Immediately

following the instruction quoted, the judge fully and correctly charged the general measure of damages if the jury should find the defendant liable, and the rules for determining the value of the life of the decedent, and the reduction of the amount found to its present cash value. Whether or not the somewhat ambiguous statement as to "diminishing damages," with the statement that the rule as to such damages was "applicable to or controlled by the charge on the general subject of damages, as to reducing same to its present value in cash," could be taken as erroneous or prejudicial in the light of the context and the clear instructions as to the amount of recovery, the only possible prejudicial effect lay in perhaps authorizing the jury to subordinate the rule as to the diminution of damages to the instructions on the general subject. Since, under the preceding rulings, the defendant failed to carry its burden of proving that the deceased mother of the plaintiffs was guilty of any contributory negligence, either defeating or diminishing the recovery, although the judge submitted these issues, the defendant has no just ground of complaint against the charge in question, as depriving it of the benefit of the comparative-negligence rule.

(e) There was no prejudicial error, likely to have confused or misled the jury, in the instruction that the plaintiffs "contend in this suit that, as a result of a collision between an automobile in which their mother, father, and sister were riding" and a train of the defendant, "their mother, father, and sister lost their lives," that "the death of their parents and sister was caused by this negligence on the part of the train, and as a result of the *killing of their mother* that they are entitled under the law to recover *damages for that killing.*" The petition contained an averment as to the presence of the sister in the automobile and her death in the collision, which was also shown by the evidence. Although this reference to the sister was irrelevant, no harmful error appears in the mention by the court of this averment of the petition, to which there was no demurrer, since the language "killing of their mother" in close connection with the words "that killing," taken with the otherwise definite and precise language of the charge, could not reasonably have been misunderstood by the jury as authorizing them to consider any death except that of the mother, in determining the issues as to the liability of the defendant and finding the amount of damages.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*